United States against Trudeau May it please the court, good morning. Wait until the rustling is completed. Apparently the people leaving are not weight loss customers. Mr. Bruno. May it please the court, good morning. Kevin Trudeau was convicted of criminal contempt for not accurately representing the contents of his weight loss cure book on television. The affronted judge intended to impose at most a six month sentence. Yet Judge Guzman sentenced Trudeau to 10 years in jail. Reversals required because the government tried Trudeau too late with too little evidence under too low a standard resulting in too long a sentence. Our briefing presents six distinct errors but in my limited time today I plan to discuss Speedy Trial Act gilding, sentencing and the evidentiary exclusions. First to gilding. It is undisputed that the capped and uncapped contempt orders charge the same offense based on the same underlying conduct with materially identical language. It is undisputed that more than 70 days passed from the initial charging. And it is undisputed that Trudeau received misdemeanor like speedy trial treatment for a crime that resulted in a felony level punishment. Other than attempting to cast aside the gilding doctrine the only defense that the government mounts is that a change in judges is a reasonable explanation for a new charging date. But even if that were an explanation it's not a reasonable one. The government never says why this change should affect Trudeau's speedy trial rights. And it was the government not Trudeau who created the two charging dates as a result of its own motion to amend. The government had the opportunity to seek a felony punishment in front of Judge Gettleman and it expressly declined to do so. Accordingly a gilding violation occurred and dismissal is appropriate. At minimum this court should reduce the sentence to six months to make it consistent with applying the act. And in the jury trial context if a jury is not provided the punishment during the sentencing phase is capped at the petty offense limit. This court can apply that same solution here in the speedy trial context and therefore limit the punishment to the maximum level for a petty offense that of six months. Would you agree that once the court issued the second show cause order from that point forward there was no violation of the Speedy Trial Act? That is if the clock restarted when the second order was issued there was no violation of the Speedy Trial Act. If the clock restarted that's correct Your Honor. But again the time had already well run there was already as the government admitted below a five month delay here. Now the six month sentence can also be justified on another grounds. And that's that it's consistent with this court's criminal contempt sentencing standard. That standard requires the court to use the least possible power to deter and punish contemptuous conduct. Judge Gettleman recognized that principle when he imposed a six month cap. A cap that the government did not dispute at that time. He said the contempt was quote like a misdemeanor and quote would not be prosecuted as a felony if you will or the equivalent of a felony. Judge Guzman on the other hand violated that least possible power doctrine. With no change in factual circumstances he handed down a sentence 20 times greater than what Judge Gettleman's proposed maximum punishment was. The purpose of a contempt sanction is to vindicate the authority of a court. It's not to punish for an underlying substantive offense. And in the other similarly high Seventh Circuit contempt sentences. I'm lost. The function of civil contempt is to achieve compliance. The function of a criminal contempt is precisely to punish. It is to punish but it's to punish against the offense against the court not to punish against some generally recognized harm. Yes and among the offenses against the court are the fact that your client while continuing to live a luxuriant lifestyle hasn't paid a penny of the civil contempt sentence. Right. If you poke your finger in the eye of the judge one might expect the judge to respond. You're right. Those civil contempts weren't the basis for the criminal contempt trial. It was obvious that there was a need for punishment of your client. The judge reached that conclusion. And you're right. Judge Gettleman knew all those facts and he still intended on imposing at most a six month sentence. And in this court's other jurisprudence where similarly high sentences to Trudeau's were given. What the defendant was really the real wrong that occurred in those cases was that the defendant was interfering with the administration of justice to prosecute for serious underlying offenses. In Ashkar the defendant even with immunity refused to testify which was blocking essentially a terrorism prosecution. And in Meisenheimer the defendant had already been serving two life sentences. And so the court admitted that it had to increase the sentence to try and teach the defendant a lesson. Here. Have we moved to a sentencing argument or are you still on the Speedy Trial Act? Your Honor I actually think the two complement each other because frankly this is a sentencing argument. But the fact is Trudeau received misdemeanor like speedy trial rights as if it hadn't applied. As you well know in the wake of Booker we don't review district judges' sentences if they are intelligently explained. Judges are entitled to have different sentencing philosophies. It's certainly my wish and perhaps Judge Sykes' as well that you concentrate your argument on the legal points of which the Speedy Trial Act is the leading legal contention. Yes, Your Honor. Trying to get us to substitute judgment for the district court is not productive. Understood, Your Honor. Well then returning to the gilding argument the government has presented no reasonable explanation. I don't even understand this gilding part. Let's just concentrate on the language of the statute. Right. What language are you relying on? Are you say relying on the difference between subsections H5 and D1 about what time is excluded? That might get you someplace perhaps. Well, Your Honor, as in Rojas Contreras basically in concurrence that framework was flushed out basically to incorporate what is the gilding doctrine. But the real language we're relying on under the statute. I don't understand gilding. Just forget about it. Look, if I understand the government's argument correctly, it is that the dismissal of the charge and the replacement of the new charge under subsection D1 restarted the clock. And after that happened, there was no excludable time. Judge Guzman was very careful about all the exclusions. I think, I may not be sure about this, I think you are arguing based on H5 that this was a dismissal and refiling at the prosecutor's behest and so the only time, so the time carries over. Is that your argument? That's correct, Your Honor. What occurred here we're saying is akin to a superseding indictment. And so that would carry over the time. As this court has acknowledged in Hemings and Menzer superseding. Now, is that an accurate understanding of what D5, sorry, what D1 says? D1 plainly says that if the indictment is dismissed at the defendant's behest, then the clock restarts. D1 could be read, I think, to say that if it's dismissed at the judge's behest, the clock restarts. And then we need to figure out how best to understand what's going on here. Was this a dismissal wholly at the prosecution's behest or was it at the judge's behest or the defendant's behest too? Your Honor, Trudeau certainly didn't want the ultimate occurrence. He wouldn't have wanted a dismissal of a six-month charge to then end up with a charge that was uncapped. But he did want a new judge. Yeah, he did. He wanted a new judge. Yes, Your Honor. And I don't think Trudeau should be punished for his right to exercise his belief that there was an- It's not a question of punishing him for exercising his right to a new judge. If you exercise, if you ask for a new judge and get it, you may get a different sentencing philosophy. And that certainly happened here. But I'm asking a technical question about the meaning of subsection D-1 in the Speedy Trial Act. And it would help me if you would address it. Your Honor, D-1, it seems to me, would address the specific case where a defendant moves for dismissal. But that motion was denied. The question I'm asking is whether D-1 doesn't also cover the case where the judge wants to dismiss, particularly in contempt where these are judge-brought charges. How does D-1 deal with contempt? Is a judge-favored or a judge-sponsored dismissal within the scope of D-1? I need to get the way D-1 works for contempt cases pinned down. I think it's vital. Your Honor, I think the judge is akin to the prosecutor in that case then because they're the one that institutes the indictment. The judge is not the prosecutor. That's correct. The judge is the judge. Otherwise, the judge would be recused. I'm asking how D-1 works when the judge is in favor or sponsors or promotes the dismissal. And I think that's best answered by dealing with the language of D-1. That's why I want you to deal with this technical legal question. Your Honor, there's nothing in D-1 that suggests that the court in a sua sabante dismissal would fall within D-1. But that's not even what happened here. The dismissal was the result of the government's motion to amend. And to be technical, there was no dismissal on the docket. There was an introduction of an amended order that came thereafter. But the first original order was never dismissed to begin with. Turning to the natural cures argument, Your Honor, the court should find that Trudeau was denied the right to present his good faith defense when it excluded the natural cures evidence. And it can do so. It's obvious you don't want to discuss the language, but let me just quote you what's troubling me. D-1 begins, if any indictment or information is dismissed upon motion of the defendant, comma, or any charge contained in a complaint filed against such individual is dismissed or otherwise dropped, and thereafter, et cetera, the question I'm asking is whether in a contempt case we aren't in the second clause. Any charge contained in a complaint is dismissed or otherwise dropped. Your Honor, my interpretation of that would be that it's referring to where there is an indictment with multiple charges and a subset of those charges would be drops. This doesn't appear to contemplate the court dismissing either on its own or at its own behest, I think is the language you used, to fall within that particular argument. Are there any decisions either at the court of appeals level or even at the district court level discussing whether or if so how that second clause, the one between the two commas, applies in contempt cases? Standing here right now, Your Honor, I don't know of any. Okay. If there aren't, there aren't. Now, turning to the natural cures evidence, it is undisputed that the FTC told Trudeau that it no longer objected to the dissemination of the natural cures infomercial. And it's also undisputed that the FTC tacitly agreed in Trudeau's presence that the natural cures infomercial was the first tangible example of something that is acceptable under the infomercial provision. It is also undisputed that Trudeau's good faith defense, if accepted, negates willfulness. But the district court held here that Trudeau's understanding of the consent order is relevant only if it is ambiguous and that his reliance on the natural cures evidence is relevant only if there is evidence to suggest that his use of the natural cures infomercial was reasonable. And that's not the law. As the Supreme Court said in Cheek, willfulness is lacking if the jury credits a good faith misunderstanding and belief submission whether or not the claim belief or misunderstanding. Well, it said that in one case. It is also said that willful means very different things in different situations. So it's really easy to find different definitions of willfulness. Why is that particular definition of willfulness the only one that's appropriate for contempt prosecutions? Because, Your Honor, the Supreme Court has said that that is the default standard under the common law. And this court, when incorporating willfulness into the contempt statute, brings with it the common law. It's consistently as the Supreme Court Given that the willfulness requirement in a contempt charge is a judge-made rule and not a statutory element, why would the cases interpreting statutory willfulness even apply? I would think that if judges added the element of willfulness, judges could also define what we mean by willful. That's true, Your Honor. And the Supreme Court has said in the criminal context it is consistently held that a defendant cannot harbor such criminal intent, the willfulness intent, unless he acted with knowledge that his conduct was unlawful. And it differentiated that from the common law treating civil actions in reckless disregard. Thank you. Thank you, Mr. Bruno. Mr. Kirkbaugh. Good morning, and may it please the Court. Good morning. During the entire period in which time was not excluded in this case, the sentence of Mr. Trudeau was capped at six months in prison. He was charged at that time with a Class B misdemeanor, and by its plain terms, the Speedy Trial Act did not apply to that charge. Now, the sentencing cap in this case had a number of consequences. The problem with your position is the language of subsection H-5, which says that if a charge is dismissed at the prosecutor's behest, all the time between the dismissal and the reinstatement is excluded, but all other time counts. So if H-5 governs this, it looks like the time before the dismissal counts. That's what H-5 says. Why isn't H-5 the controlling clause in this case? You're relying on D-1. My question is, why aren't we in the world of H-5? Well, actually, Your Honor, we haven't made the D-1 argument that Your Honor referenced. Our argument is that the act did not apply at all, and so neither D-1 nor H-5 applied. You've conceded that the act applies. We now have to figure out what it means, given that it applies. We have not conceded that, Your Honor. Your brief finally concedes that. Judge, what our brief stated was that the act clearly applied after Trudeau was charged with a felony. There's no question about that. But the only period in which time was not excluded under the act came before that, when he was charged with a misdemeanor, and the act does not apply to Class B misdemeanors. Section 3172, subsection 2, states that plainly. So neither D-1 nor H-1 applies here because none of the acts apply at the time the time was not excluded. Help me for a minute. Was there a dismissal of Judge Gettleman's order followed by the equivalent of a new indictment, or did the court simply allow an amendment similar to a superseding indictment? And where in the record is the court's actual ruling? I saw in the transcript of the hearing on the government's motion to amend, that was Record 77 at page 23, that the court withholds ruling until the new charge is filed. So where is the actual ruling? Well, what Judge Guzman said in R-77 was that the order was that the original order to show cause be dismissed. And he said to the government, submit a new order, and at that time we will dismiss the original order without prejudice. We then submitted a new order. There was no written dismissal order that followed that. But Judge Guzman clearly announced his ruling that the original order should be dismissed. He said it twice. He said it initially that it would be dismissed, and then the government asked him to clarify and said that we understood his ruling to be that the original order would be dismissed without prejudice, and he agreed with that. And that's when he announced the procedure that he wanted to follow, which was that the government would submit a new order, new proposed order. He would enter it and then dismiss the original order. Well, what do you view as the justification for the change from a misdemeanor to a felony charge here? I mean, it doesn't seem as if he had committed any additional offenses in the interim. I mean, had he engaged in additional contempt that I'm not aware of? He says that the only change was in the presiding judge. So is that true? It is true that, well, there are two changes. No additional crimes by Trudeau at the time that we asked Judge Guzman to lift the cap, although by the time of sentencing several things had changed. But I will focus on your question, which is when we asked Judge Guzman to lift the cap. What had changed was the case was no longer being presided over by Judge Gettleman, who before the government even entered the case had announced that he would not impose a sentence of more than six months. That was before we were a party to the case. And so the case was referred to the government to prosecute as a misdemeanor offense with a six-month cap. We chose not to argue with Judge Gettleman about that. When the case was transferred to Judge Guzman at Trudeau's request, Judge Guzman, unlike Judge Gettleman, had not announced his intention to limit the sentence in the case. And what the government said to him was very simple. We said, in our view, this offense is serious enough that a six-month sentence is inadequate. After the court hears all of the evidence, reads a PSR, and conducts a sentencing hearing, the court may well agree with us, and the court should give itself the option to impose a lengthier sentence in this case. Judge Guzman agreed. He explicitly found that there was nothing improper about the government's request to lift the cap, and he agreed to lift it based on his judgment about the seriousness of the offense. It's not so much a lifting of the cap as it is the issuance of a new charging order, right? Well, both are significant. Judge Guzman inherited a misdemeanor case. He did. He did. Dismissed it. And issued a new felony charge. That is exactly what happened. I mean, it's a little ñ it's not clean. It's not clean, but that is what occurred. And when this case went from a misdemeanor to a felony, it went from an offense that the Speedy Trial Act did not apply to under 3172-2 to an offense that it did apply to. And at that point, time was properly excluded. None of those exclusions are being challenged on appeal. So the only time period at issue is when this was a misdemeanor charge and the act did not apply. And the only two courts of appeals that we are aware of that have addressed this issue have held that when a trial judge caps a sentence at six months, that offense is a Class B misdemeanor or a petty offense, and the Speedy Trial Act does not apply. The Sixth Circuit reached that conclusion, as did the Ninth Circuit. We are aware of no contrary authority, and certainly Trudeau cites none. So I think that controls the Speedy Trial Act question. And it is something that is unique about contempt, and the Supreme Court described this in Frank v. United States. Contempt is an offense that spans a wide array of conduct, from relatively trivial conduct to extremely serious conduct. But the maximum punishment is life in prison. And so the controlling factor is the sentence actually imposed. But there is a corollary to that, which is that if a trial court caps a sentence at six months, that charge is a misdemeanor. It means the defendant doesn't have a right to a jury trial under the Sixth Amendment. It means that the offense can be charged before a magistrate judge and not before a district judge. And it means that the Speedy Trial Act does not apply. Those are the consequences of that decision. I will speak. I'm happy to answer any further questions about the Speedy Trial Act issue because I agree. Who is the charging authority in a contempt, a criminal contempt? Well, it could happen in a few different ways. In this case, it was the judge. Judge Guzman, well, Judge Gettleman issued the original order to show cause, and Judge Guzman entered the amended order to show cause. The judges made that decision. Right. When contempt is initiated in this way, does the U.S. attorney have the authority to recharge or reissue the charge? I think we could have. We could have sought an indictment. I'm not aware of a precedent for there being dueling charging documents, one in order to show cause and one in indictment. I don't know how that would work. But I do think that contempt is a case that could be charged by indictment. In this case, Judge Gettleman issued the original order before we were a party and asked that we show up and decide whether we would agree to prosecute the case, which we did. And when the government initiates a contempt charge by indictment, the maximum penalty is life? It is, although even in that circumstance, the trial court could announce at the outset that he or she will cap the sentence at six months, which would make the offense a felony. A misdemeanor. Excuse me, a misdemeanor. So it is the decision of the trial court about whether or not there will be a cap that controls the seriousness of the offense. And that is unique to contempt. It is not true of any other offense that I am aware of in the Code. What is the government's best evidence that Mr. Trudeau acted willfully? In other words, where in the record will we find the evidence of willfulness? Because, I mean, is there more than the act of disobeying the order? Is there more than that? Yes. I think there are three places to look. The first is the consent decree. Trudeau was intimately familiar with the terms of that decree because he agreed to it along with his lawyer. The second place is the book. All right, so he disobeys the order. Yes. Okay, well, I'm wondering if there's more than him disobeying the order. Well, the disobedience of the order was so blatant and so brazen, in this Court's words, Trudeau outright lied in the infomercials. That's the conclusion this Court made in the civil case. Well, an outright lie is a willful act. And in this case, Trudeau knew that the court order prohibited him from lying about his book in his infomercials. Then he went out and blatantly and repeatedly lied about his book in his infomercials. He did it to sell more books and to make more money because if he had accurately described his book, it would have sold many, many fewer copies because what it actually describes is a grueling diet involving. . . The defendant has acted willfully. No, you're wrong. Well, then. . . The district court, in ruling on the post-trial motions in this case, pointed to the infomercials. The court had the opportunity to view the infomercials, the videos, as did the jury, of course. In those infomercials, Trudeau is looking directly at the camera, animatedly describing his book in terms that are blatantly false, and not little fibs or something that people could disagree about, but saying that this diet did not involve calorie counting or portion control when it involved a 500-calorie-a-day restriction and measuring the portions of one's meat to the gram. This is not something that one is mistaken about when Trudeau chose to lie about it. He knew he was lying. This court said that he outright lied, that he loaded his infomercials with statements that are blatantly false, and he knew that the court order prohibited him from doing that. The jury was certainly entitled to reach that conclusion. As this court reached that conclusion in a different context in the civil case, as Judge Guzman reached that conclusion in denying the post-trial motions, taking the evidence in the light most favorable to the government, that was a fair inference in this case. I would say, finally and briefly on the sentencing issue, by the time of sentencing, Trudeau had been found in contempt of court seven times, had engaged in an elaborate scheme to hide his assets from the FTC, had filed two false, perjurious financial statements under oath, and had engaged in a nearly $40 million consumer fraud in addition to his violation of Judge Gettleman's 2004 consent decree. A sentence of half of the bottom of the guidelines range is reasonable, particularly when Trudeau doesn't challenge that range on appeal. The sentencing issue, in our view, is not a particularly close call, and it was certainly a sentence within Judge Guzman's discretion. If there are no further questions, I'll ask the court to affirm Trudeau's conviction and his sentence. Thank you. Thank you, counsel. Anything further, Mr. Bruno? Yes, sir. Your Honor, I'd like to take up the issue of the motion for acquittal here, because I think it's relevant that everything that the government pointed to could just as easily have had an innocent explanation as one that came from a wrongful mindset. Essentially, the government pointed to three things, his celebrity presence in the infomercial and alleged profit motive in the statements themselves. But just because the size of his purported lie is great does not necessarily mean that his mindset was any more wrongful. You can tell a large inaccuracy just as believing it to be honest as if you were telling a small inaccuracy. And so just by virtue of the fact that there may, and we're not conceding there were, gross misrepresentations, but even if there were, that has no effect on whether or not he had that willful mindset. Now turning next to the gilding argument, looking at the language of H-5 itself, it specifically says if the information or indictment is dismissed upon motion for the attorney for the government and thereafter a charge is filed against the defendant for the same offense, here that's what happened. Admittedly, in a motion to amend, but a motion by the government was filed. A charge wasn't actually dismissed, but even assuming that it was, that there was instead a superseding indictment, there was a charge filed after the defendant for the same offense. Therefore, the time has to run from the initial charge. Unless the court has any other questions. Thank you. Thank you very much. The case is taken under advisement.